FILED
John E. Triplett, Clerk of Court
United States District Court
By jburrell at 12:45 pm, Jan 07, 2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | INFORMATION NO. 4:22cr-2 |
| | ) | |
| v. | ) | 18 U.S.C. § 1349 |
| | ) | **Conspiracy** |
| **AMBER CHILDERS** | ) | |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this Information:

Background

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 designed to provide emergency financial assistance to the millions who are suffering the economic effects caused by the COVID-19 pandemic.

2. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

3. Defendant **AMBER CHILDERS**, who resided in the Savannah Division within the Southern District of Georgia, conspired with an individual whose initials are S.W. to fraudulently seek CARES Act funds by making false and fraudulent representations to the Small Business Administration ("SBA").

4. The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA was headquartered in Washington, DC and maintained its computer servers outside of the State of Georgia. The SBA's mission was to maintain and strengthen the

nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

5. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees. In addition, the SBA provided loans that came directly from the U.S. Government.

6. One source of relief provided by the CARES Act was the authorization for the SBA to provide Economic Injury Disaster Loans ("EIDL") to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

7. In order to obtain an EIDL, a qualifying business had to submit an online application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the twelve-month period preceding the disaster, and the cost of goods the business sold in the twelve-month period preceding the disaster. In the case of EIDLs, the twelve-month period was that preceding January 31, 2020. The applicant also had to certify that all the information in its application was true and correct to the best of the applicant's knowledge.

8. EIDL applications were submitted directly to the SBA online at https://covid19relief.sba.gov/#/ and processed by the agency with support from a government contractor, Rapid Finance. The amount of each loan was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL were

issued directly by the SBA.

9. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

## COUNT ONE
*Conspiracy*
18 U.S.C. § 1349

10. Beginning no earlier than July 2020, the exact date being unknown, and continuing thereafter until at least in or about August 2020, within the Southern District of Georgia and elsewhere, the defendant,

**AMBER CHILDERS**

and other co-conspirators, including an individual whose initials are S.W., did knowingly and willfully, combine, conspire, confederate, and agree with each other to, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmit or cause to be transmitted by wire communication in interstate commerce any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343, the conspiracy to commit such offense being in violation of Section 1349 of Title 18 of the United States Code.

Object of the Conspiracy

11. It was the object of the conspiracy that Childers and S.W. to unlawfully enrich themselves by obtaining EIDL proceeds under false and fraudulent pretenses and representations, including by making false statements about their purported

businesses' dates of establishment and gross revenues for the twelve-month period prior to the date of the disaster.

## Manner and Means

12. It was part of the conspiracy that, on or before July 30, 2020, Childers and S.W. agreed to a common and unlawful plan to submit an application for an EIDL to the SBA that Childers and S.W. knew to contain false or fraudulent representations.

13. It was part of the conspiracy that, on or before July 30, 2020, S.W. assisted Childers with applying for an EIDL for a company purportedly run by Childers. S.W. explained to Childers how the "math" worked to get an EIDL. Thereafter, on July 30, 2020, Childers filled out an EIDL Application ending in -5772 on behalf of Childers's purported small business. Among other false or fraudulent representations contained in Childers's EIDL Application, Childers falsely stated that her business had gross revenues for the twelve months prior to the date of the disaster (January 31, 2020) of $200,000. She also claimed that her cost of goods sold for the twelve months prior to the date of the disaster (January 31, 2020) was $0. Childers and S.W. both knew that Childers's gross revenue numbers were false and that this "math" (i.e., the representations regarding the business's gross revenue and cost of goods sold) could lead to a substantial EIDL from the SBA.

14. Also on July 30, 2020, and in furtherance of the conspiracy, S.W. asked Childers to create a fake tax document showing 2019 compensation of $220,000 for an individual whose initials are K.J. S.W. told Childers that S.W. was using the fake

tax document as part of K.J.'s EIDL application. S.W. told Childers the figures to use in the fake tax document. In exchange for providing the fake tax document, S.W. agreed to pay Childers $100. S.W. instructed Childers to email the fake tax document to an email address purportedly belonging to K.J., and Childers did so on July 30, 2020. Childers knew that this fake tax document was going to be provided to the SBA.

15. Later on July 30, 2020, at S.W.'s request, Childers called a loan officer with SBA who had been assigned to review K.J.'s EIDL application. Childers told the loan officer that she was calling to "verify" K.J.'s tax document. Childers did so with the intent to influence the actions of the loan officer, knowing the unlawful purpose of S.W.'s plan and willfully joining in it.

All done in violation of Title 18, United States Code, Section 1349.

_____
Karl Knoche
Assistant United States Attorney
Chief, Criminal Division

_____
Jonathan A. Porter
Assistant United States Attorney
*Lead Counsel

_____
Patrick J. Schwedler   with express
Assistant United States Attorney   permission
*Co-lead Counsel   JAP